915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Lucio ROSARIO-CLASS, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 90-1144.
 United States Court of Appeals, First Circuit.
 July 16, 1990.
 
 Appeal From The United States District Court For The District Of Puerto Rico, Hector M. Laffitte, District Judge.
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief, for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Amy S. Knopf, Assistant Regional Counsel, Department of Health and Human Services, on brief, for appellee.
 D.P.R.
 VACATED AND REMANDED.
 Before BREYER, Chief Judge, and CAMPBELL and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 The claimant, Lucio Rosario Class, alleged that he was disabled due to a back injury and a nervous condition. At the time of his back injury in October 1984, the claimant, a resident of Puerto Rico, was 46 years old and working as a handyman for a construction company. He previously had worked as a heavy equipment operator. The claimant had a second-grade education, but spoke no English and claimed to be illiterate. He injured his back at work, when he bent down to pick up a piece of iron and felt, in his description, a "rip" in his spinal column.
 
 
 2
 * The claimant first sought treatment through the State Insurance Fund. The records of his treatment there show that the claimant reported lumbar spasms and pain. An x-ray revealed "osseous degenerative changes in the lumbosacral region" and the claimant was diagnosed as suffering from chronic lumbar paravertebral myositis.
 
 
 3
 The claimant applied for Social Security disability benefits in August 1985. Soon after, on September 3, 1985, he was examined by Dr. Angela Manana de Velazquez, a neurologist retained for consultation by the Secretary of Health and Human Services ("the Secretary"). Dr. Manana recorded an "impression diagnosis" of chronic low back pain syndrome following a lumbosacral muscle sprain, and dorsolumbar levoscoliosis, a condition revealed by x-rays taken on the same day. Dr. Manana's diagnosis did not rule out the possibility of lumbosacral radiculopathy.[1]
 
 
 4
 The claimant then visited a private physician, Dr. Modesto Fontanez. Dr. Fontanez noted the claimant's complaints of "severe, stabbing pain and flexion spasms," recorded "severe dorso-lumber spasm" and limited flexion, and diagnosed severe chronic lumbosacral myositis and strain, bilateral L4, L5, and S1 radiculopathies, chronic benign pain syndrome and depressive neurosis. According to Dr. Fontanez' report, the claimant had both musculoskeletal and nerve root involvement producing chronic pain as well as "functional spinal and distal lower extremities limitations"; hence, he was "in no condition to indulge in any type of labor activities at the present."
 
 
 5
 The claimant was then referred to a second consulting neurologist for the Secretary, Dr. Laura Marrero, who noted the claimant's complaints of low back pain radiating to the left testicular area, and sometimes upwards to the shoulders, and the fact that the claimant was taking medications that included Parafon Forte, a pain medication.[2] Dr. Marrero also noted mild spasms and patchy areas of numbness in the claimant's right leg and arms, and diagnosed lumbar myositis and anxiety disorder.
 
 
 6
 In 1987 the claimant underwent a CT scan process which showed evidence of a "central posterior bulge at disc L4-L5." He was then diagnosed as suffering from a herniated disc.
 
 II
 
 7
 The Secretary denied the claimant's application for disability benefits both initially and on reconsideration. An Administrative Law Judge then held a hearing, at which the claimant testified. The ALJ ruled that the claimant was capable of doing a limited range of light work, and that, taking into account his age, education and vocational background, the claimant was not disabled.
 
 
 8
 The claimant appealed this decision to the district court which, acting on a magistrate's recommendation, remanded the matter for "the taking of vocational testimony to resolve the issue" of whether a significant number of jobs which the claimant could perform existed in the national economy. A second hearing was held in December 1988. The remand ALJ heard testimony from a vocational expert who, in response to a hypothetical question that presupposed, among other things, the claimant's ability to perform "light" work, testified that specific jobs existed for the claimant in the national economy. The ALJ then ruled that the claimant was not disabled. Central to the decision was his finding that the claimant had the residual functional capacity (RFC) to perform "light" work. Specifically, the ALJ found that the claimant could "perform within the range of light work activity as he is able to lift and carry up to 20 pounds, push and pull that amount, stand, walk and sit for six hours in each position...."
 
 III
 
 9
 The only issue for us on appeal is whether there was "substantial evidence" in the record to support the remand ALJ's finding that the claimant had the RFC to do a limited range of "light work." We conclude that there was not. The remand ALJ made his finding without the benefit of any medical assessments that "indicate[d] in lay terms in what manner claimant's ... physical problems might limit his ability to sit, stand, lift, bend or perform other basic work activities." Rivera-Torres v. Secretary of Health and Human Services, 837 F.2d 4, 6 (1st Cir.1988) (per curiam). None of the doctors expressed an opinion one way or the other as to the claimant's ability to perform the tasks required for "light" work, for "sedentary" work, or for any of the other categories of work employed in making a disability determination. None assessed the claimant's ability to lift, carry, push, pull, sit, stand, walk or perform any of the other activities relevant to a determination of residual functional capacity. Indeed, none of the doctors, with the exception of Dr. Fontanez, stated how the claimant's back problems had affected any of his physical capabilities, or limited his ability to perform typical work activities, and Dr. Fontanez was of the opinion that the claimant was in no condition to do any type of labor.[3]
 
 
 10
 The reports in the record were limited to medical findings stated in medical terms. They tell us only that the doctors had diagnosed "osseous degenerative changes in the lumbosacral region" (State Insurance Fund reports), "dorsolumbar levoscoliosis" (Dr. Manana), "severe chronic lumbosacral myositis and strain," "bilateral radiculopathies," and "functional spinal and distal lower extremities limitations" (Dr. Fontanez), "lumbar myositis" (Dr. Laura Marrero) and, finally, a herniated disc. These are medical labels which carry no readily discernible message about the physical capacities of an individual suffering from the conditions they denote. Because "the ALJ, a lay fact-finder, lack[ed] sufficient expertise" to interpret these labels, the medical reports did not provide "substantial evidence" for his conclusions about the claimant's residual functional capacity.[4] Rivera-Figueroa v. Secretary of Health and Human Services, 858 F.2d 48, 52 (1st Cir.1988) (per curiam). See also Rivera-Torres v. Secretary of Health and Human Services, 837 F.2d at 7; Rosado v. Secretary of Health and Human Services, 807 F.2d 292, 293 (1st Cir.1986) (per curiam) (bare medical findings are unintelligible to a lay person in terms of residual functional capacity, and ALJ is not qualified to make that connection himself); Berrios v. Secretary of Health and Human Services, 796 F.2d 574, 576 (1st Cir.1986) (per curiam); Lugo v. Secretary of Health and Human Services, 794 F.2d 14, 15 (1st Cir.1986) (per curiam).
 
 
 11
 The remand ALJ's error was not harmless. It occurred at step five of the sequential analysis, at which point the Secretary bore the burden of showing that jobs existed for the claimant in the national economy. Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir.1982). The district court had remanded the matter for the taking of vocational testimony to resolve that very issue. The remand ALJ followed the letter of the district court's command, but his questions to the vocational expert were based on the assumption that the claimant was capable of doing "light" work. Without "record evidence to support this assumption, the opinion expressed by the vocational expert [was] meaningless," Brittingham v. Weinberger, 408 F.Supp. 606, 614 (E.D.Pa.1976), and the Secretary had no competent evidence, much less "substantial" evidence, on which to base a finding that the claimant was not disabled.
 
 
 12
 The decision of the district court is vacated and the case is remanded with directions to remand to the Secretary for further proceedings consistent with this opinion.
 
 
 
 [1]
 A radiculopathy is a "disease of the nerve roots." Sloane-Dorland Annotated Medical-Legal Dictionary at 601
 
 
 [2]
 Parafon Forte is "indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomfort associated with acute, painful musculoskeletal conditions." 1990 Physicians' Desk Reference at 1287
 
 
 [3]
 The record does contain a brief report from a non-examining physician (Dr. Anduze) which states: "Lack of objective findings to justify severity. Condition considered slight." This report was dated September 19, 1985 and apparently was made in reference to step two of the sequential analysis, 26 C.F.R. Sec. 404.1520(c). It is of no use to us for at least three reasons: (1) both ALJs found that the claimant did have a "severe impairment" sufficient to satisfy 26 C.F.R. Sec. 404.1520(c), (2) Dr. Anduze did not see much of the medical record, particularly the 1987 CT scan report on which the diagnosis of a herniated disc was based, and (3) the report was made prior to the Secretary's clarification of his severity regulation in October 1985, making it impossible for us to "tell whether the doctor [was] properly limiting [his] use of the nonsevere label to de minimis conditions." Rivera-Torres, 837 F.2d at 6, citing McDonald v. Secretary, 795 F.2d 1118, 1124 (1st Cir.1986); Fernandez v. Secretary, 826 F.2d 164, 167 (1st Cir.1987)
 
 
 [4]
 The specificity of the remand ALJ's RFC finding is mystifying. Nothing in the record says that claimant can push, pull, lift or carry any number of pounds, much less twenty, and the only direct evidence regarding the claimant's ability to stand, walk or sit is his own testimony that he can sit for about 15-20 minutes, and stand or walk for about an hour